UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

ANITA HARLEY, on behalf of herself and all   :
others similarly situated,

                               :   CV 17-1238 (SJF)(AKT)

                  Plaintiff,

                               :

   - against -

                               :

ENHANCED RECOVERY COMPANY, LLC,

                               :

                   Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

---

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

---

**SMITH, GAMBRELL & RUSSELL, LLP**
Peter G. Goodman, Esq.
1301 Avenue of the Americas, 21st Floor
New York, New York 10019
Phone: (212) 907-9700
Fax: (212) 907-9800
pgoodman@sgrlaw.com
*Attorney for Defendant*

## TABLE OF CONTENTS

I.   Introduction...............................................................................................1

    a.  Issue before the Court  .....................................................................1

    b.  Legal Standard  ................................................................................1

II.  The Second Circuit holding in *Avila* only requires a disclosure from the
     collector when the amount sought to be collected by the collector is not
     static, due to the accrual of interest or fees ...........................................2

    a.  The *Avila* holding: it is misleading to fail to disclose that the
        amount sought by the collector is accruing interest when presenting the
        amount of the debt. ........................................................................3

    b.  The *Avila*  court's reasoning does not apply to the theory asserted here, i.e.,
        that a collector must affirmatively disclose when an account is not
        accruing interest ...........................................................................7

    c.  Analysis of case law applying the Seventh Circuit precedent adopted
        in *Avila* confirms a collector is *only* required to use the safe harbor
        language when the amount sought is presently increasing due to the
        accrual of interest .........................................................................9

III. Plaintiff has failed to state a viable claim  under the *Avila* decision ....................13

    a.  No prejudgment interest is due on Ms. Harley's account absent a
        judgment, nor is a creditor required to seek prejudgment interest from a
        consumer ....................................................................................14

    b.  Plaintiff's failure to allege that ERC sought interest or other fees
        from Ms. Harley, over and above the stated balance, is fatal to her *Avila*
        claim............................................................................................17

    c.  Ms. Harley's attempt to recast her *Avila* claims as violation of other
        provisions of the Act is likewise unsupported in law. .....................................18

        1. Itemizing principal, interest, and other fees does not violate
           the Act......................................................................................18

        2. Ms. Harley does not allege any facts in support of her claims
           under sections 1692f and 1692e(5) ....................................................19

IV.  The use of ERC's initials in its letters is wholly consistent with FTC
     guidance and does not violate the Act.  ..............................................................20

i

V.     Conclusion ..........................................................................................................23

## **TABLE OF AUTHORITIES**

**Cases**

*Accord Vincent v. The Money Store*, 736 F.3d 88 (2d Cir. 2013)................................................. 21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................................... 2

*Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72 (2d Cir. 2016)............................................ *passim*

*Beauchamp v. Fin. Recovery Servs., Inc.*, No. 10 Civ. 4864(SAS), 2011 WL 891320 at *3
(S.D.N.Y. Mar. 14, 2011) ........................................................................................................ 12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................................... 1

*Bird v. Pressler & Pressler, LLP*, No. 12-cv-3007(JS)(ETB), 2013 WL 2316601
(E.D.N.Y. May 28, 2013) ................................................................................................... 14, 15

*Brown v. Card Serv. Ctr.*, 464 F.3d 450 (3d Cir. 2006) ................................................................. 22

*Carlin v. Davidson Fink LLP*, 852 F.3d 207 (2d Cir. 2017)..................................................... 6, 19

*Chuway v. Nat. Action Fin. Servs.*, 362 F.3d 944 (7th Cir. 2004) .............................. 10, 11, 15, 17

*Curto v. Palisades Collection, LLC*, No. 07-cv-529, 2011 WL 5196708, at *8
(W.D.N.Y. Oct. 31, 2011)...................................................................................................... 9, 17

*Dick v. Enhanced Recovery Co., LLC*, 15-CV-2631 (RRM) (SMG), 2016 WL
5678556, at *5 (E.D.N.Y. Sept. 28, 2016)..................................................................... *passim*

*DiFolco v. MSNBC Cable LLC*, 622 F.3d 104 (2d Cir. 2010)........................................................ 2

*Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643 (S.D.N.Y. 2006)............................................. 20

*Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985)......................................................................... 2

*Greco v. Trauner, Cohen & Thomas, LLP*, 412 F.3d 360 (2d Cir. 2005)..................................... 2

*Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85 (2d Cir. 2008) ......................................... 4

*Leonard v. Israel Discount Bank of N.Y.*, 199 F.3d 99 (2d Cir. 1999) ........................................ 2

*Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232 (2d Cir. 1998) ........................................ 22

*Mahan v. Retrieval-Masters Credit Bureau, Inc.*, 777 F. Supp. 2d 1293
(S.D. Ala. 2011)......................................................................................................................... 22

*Martin v. Trott Law, P.C.*, 15-12838, 2016 WL 3997029, at *8
    (E.D. Mich. Jul. 26, 2016) ........................................................................ 9, 17

*Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, 214 F.3d 872
    (7th Cir. 2000).......................................................................... 10, 11, 12, 13

*Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 311 (2d Cir. 2003)........................................ 2

*Resseg v. General Revenue Corp.*, No. 14-cv-8033, 2015 WL 4525869
    (D.N.J. July 27, 2015) ................................................................................ 12

*Safdieh v. P&B Capital Grp., LLC*, 14-cv-3947 (FLW)(LHT), 2015 WL 2226203,
    at *6 (D.N.J. May 12, 2015) ........................................................................ 12

*Santibanez v. Nat. Credit Sys., Inc.*, No. 6:16-cv-81-AA, 2017 WL 126111
    (D. Or. Jan. 12, 2017) ............................................................................ 8, 18

*Scioli v. Goldman & Warshaw PC*, 651 F. Supp. 2d 273 (D.N.J. 2009) ................................ 14, 15

*Sheriff v. Gillie*, 136 S. Ct. 1594 (2016) ........................................................................ 21

*Taylor v. Fin. Recovery Servs., Inc.*, No. 1:16-cv-4685 at *9-12 (S.D.N.Y. May 18, 2007) ......... 9

*Veach v. Sheeks*, 390 F.3d 690 (7th Cir. 2003)........................................................................ 6, 15

*Velez v. Healthcare Revenue Recovery Grp., LLC*, No. 1:16-cv-377, 2017 WL 1476144
    (M.D.N.C. Apr. 24, 2017)........................................................................ 23

**Statutes**

15 U.S.C. § 1692 ...........................................................................................*passim*

15 U.S.C. § 1692e ........................................................................................*passim*

15 U.S.C. § 1692e(2) ............................................................................................ 5

15 U.S.C. § 1692e(2)(A) ....................................................................................... 3

15 U.S.C. § 1692e(5) ...................................................................................*passim*

15 U.S.C. § 1692e(10) ......................................................................................... 5

15 U.S.C. § 1692e(14) ............................................................................ 21, 22, 23

15 U.S.C. § 1692f ............................................................................ 5, 18, 19, 20

15 U.S.C. § 1692f(1)................................................................................... 5, 19

15 U.S.C. § 1692g............................................................................ 5, 6, 10, 18

15 U.S.C. § 1692g(a)(1)........................................................................................................... 10

15 USC §1692k (a)(3) ........................................................................................................ 25, 26

**Rules and Regulations**

23 N.Y.C.C.R. § 1.2(b) .......................................................................................................... 20

53 Fed. Reg. 50097, 50107 ........................................................................................ 22, 23, 24

Fed. R. Civ. P. 10(c) ............................................................................................................... 2

Fed. R. Civ. P. 12(b)(6)..................................................................................................... 1, 2, 23

N.Y.C.P.L.R. § 5001 (a)-(b) .............................................................................................. 14, 15

## I.     Introduction

### a.  Issue Before the Court

Plaintiff, Anita Harley ("Plaintiff" or "Ms. Harley") alleges Enhanced Recovery Company, LLC ("ERC") sent her a collection letter (the "Letter") seeking to collect a static balance for an account placed with ERC for collection. She asserts the Letter violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq* (the "Act") because it did not affirmatively state whether or not interest was presently accruing on her account. The Second Circuit requires collectors to disclose when they are seeking interest, such that when a consumer makes a payment on a balance stated by the collector, the consumer is aware that the payment of the stated balance may not fully resolve the account. It does not, however, require collectors to affirmatively advise consumers that payment of a stated balance <u>will</u> fully resolve the account. Ms. Harley does not allege ERC ever sought any additional amounts other than the balance stated in the Letter. Instead, Ms. Harley asks this Court to create a new rule of law requiring collectors to expressly detail to the consumer what charges are ***not*** being sought from the consumer.

Ms. Harley also asserts a second claim under the Act claiming ERC's use of its initials "ERC" in its Letter to her, rather than its full legal name, Enhanced Recovery Company, LLC, violates the specific provision prohibiting use of deceptive names.  Like Ms. Harley's primary claim, this claim is also without any basis and is contrary to the stated policies of the Act.

### b.  Legal Standard

A complaint is subject to dismissal under Rule 12(b)(6), Fed. R. Civ. P, if it does not contain more than mere labels or conclusory statements as to its claims; a formulaic recitation of the elements of the pled cause of action is insufficient. *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 555 (2007). Although the court is "constrained to draw all reasonable inferences in the plaintiff's favor" it must also "ascertain that the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 110-11 (2d Cir. 2010) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Legal conclusions may only provide the framework of the complaint; they must be supported by well-pleaded factual allegations. *Iqbal*, 556 U.S. at 679.

Under Rule 10(c), Fed. R. Civ. P, the exhibits to a complaint are properly considered as part of the complaint for purposes of a motion under Rule 12(b)(6). *Goldman v. Belden*, 754 F.2d 1059, 1065-66 (2d Cir. 1985). Trial courts in the Second Circuit may determine, as a matter of law, at the pleadings stage that no claim under the FDCPA could be based on the language in a letter to a consumer. *Greco v. Trauner, Cohen & Thomas, LLP*, 412 F.3d 360, 366 (2d Cir. 2005); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 311 (2d Cir. 2003). Additionally, in ruling on a Rule 12(b)(6) motion, the district court may rely on matters of which judicial notice may be taken. *Leonard v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999).

## II. The Second Circuit holding in *Avila* only requires a disclosure from the collector when the amount sought to be collected by the collector is not static, due accrual of interest or fees.

In her Complaint, Ms. Harley suggests the Second Circuit's opinion in *Avila,*[1] requires collectors to affirmatively state in their letters to consumers whether the amount sought is increasing due to the accrual of interest or other fees; that is, explicitly state the absence of such fees when no such amounts are accruing based, in part, on the argument that pre-judgment interest is always available to a creditor. Based on this suggestion, she claims ERC's letter falsely represented the amount of the debt owed, and thus, violated the Act.

---

[1] *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72 (2d Cir. 2016).

The *Avila* opinion, however, does not require an affirmative statement indicating the collector is not seeking interest, and the reasoning therein is inapplicable to collection balances that remain static while placed with the collector. Analysis of Seventh Circuit case law on which the *Avila* court relied further confirms the *Avila* rule does not apply here.

### a.   The *Avila* holding: it is misleading to fail to disclose that the amount sought by the collector is accruing interest when presenting the amount of the debt.

In *Avila*, the plaintiffs alleged that a collector violated the Act by sending letters that, among other things, did not affirmatively state the collector was seeking mounting interest. *Avila*, 817 F.3d  at 74. "[T]hey claimed, among other things, that the collection notices were misleading because they stated the 'current balance,' but did not disclose that the balance might increase due to interest and fees." *Id.* The court continued "[t]hey alleged that they believed from reading the notice that the 'current balance' was 'static' and that their 'payment of that amount would satisfy [the debt] irrespective of when [the] payment was remitted." *Id.* Additionally, Ms. Avila affirmatively alleged that, in fact, interest was accruing daily on the account and that the defendants had sought to collect such additional interest from her. *Id.*

The plaintiffs in *Avila* alleged the notices violated section 1692e of the Act, including subsection 1692e(2)(A). *Id.* at 75. Those provisions prohibit collectors from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt"[2] and "false[ly] represent[ing] the character, amount, or legal status of any debt."[3] *Id.*

The Second Circuit discussed the Congressional purpose for the Act and the applicable standard when ruling on claims raised under the Act. The Act was passed to both "eliminate abusive debt collection practices by debt collectors" and "to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged"

---

[2] 15 U.S.C. § 1692e.
[3] 15 U.S.C. § 1692e(2)(A).

and, accordingly, the Second Circuit interprets it with these dual goals in mind. *Id.* (*citing* 15 U.S.C. § 1692(e); *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 95 (2d Cir. 2008)). The court also noted that, in ruling on claims under section 1692e, the court applies the "least sophisticated consumer" standard, which asks whether the collection letter at issue is open to multiple, reasonable interpretations, at least one of which is inaccurate. *Id.*

Applying that standard, the Second Circuit found the notices misleading because a consumer could reasonably interpret the notice as stating payment of the listed amount would fully satisfy the debt. This, the court found, would be inaccurate where the amount sought was increasing and where subsequent payment of the then-current balance on the notice would result in a balance remaining due on the account for unpaid accrued interest, explicitly stating,

> [b]ecause the statement of an amount due, without notice that the amount is already increasing due to accruing interest or other charges, can mislead the least sophisticated consumer into believing that payment of the amount stated will clear her account, we hold that the [Act] requires debt collectors, when they notify consumers of their account balance, to disclose that the balance may increase due to interest and fees.

*Id.* at 76. . It further clarified that, "[w]e think that requiring such disclosure best achieves the Congressional purpose of full and fair disclosure to consumers that is embodied in Section 1692e" and "also protects consumers such as plaintiffs who may hold the ***reasonable but mistaken belief that timely payment will satisfy their debts***." *Id.* (emphasis supplied).

Shortly thereafter, Judge Mauskopf of this district held that no claim under *Avila* could be stated regarding a letter similar to the subject Letter, absent an allegation that the collector was seeking accruing charges on the account. *Dick v. Enhanced Recovery Co., LLC*, 15-CV-2631 (RRM) (SMG), 2016 WL 5678556, at *5 (E.D.N.Y. Sept. 28, 2016). In *Dick*, the plaintiff received a letter that presented the itemization required in New York state, showing that the interest accrued and non-interest charges & fees were $0.00, and included three settlement

4

options. *Id.* at *1. The consumer claimed the letter violated several of the same provisions of the Act cited in Ms. Harley's Complaint[4] because itemizing "non-interest charges and fees" as 0.00 "could lead an unsophisticated consumer to believe that he or she might be liable for such fees in the future." *Id.*

Judge Mauskopf rejected the claims, holding the Act does not require a collector to dispel any unfounded beliefs regarding future hypotheticals; rather it only requires disclosure of present circumstances. The court distinguished the *Avila* opinion on the basis that, in *Avila*, it was undisputed the amount of the debt the collector was seeking was increasing at the time of the letter:

> [t]he key distinction here is that [the plaintiff] does not allege that 'non-interest charges and fees' were actually accruing at the time ERC listed their amount at "$0.00," or that they were going to accrue. [The plaintiff] does not allege that the balance stated in the [l]etter was not a complete and accurate representation of the amount owed, or that the balance stated in the [l]etter may increase over time due to interest and fees. The Second Circuit's holding in [*Avila*]—that it is misleading for a debt collector to list the amount owed without disclosing the fact that said amount is increasing–does not support [the plaintiff's] argument that it is misleading to list the amount owed without affirmatively noting that the amount is *not* increasing. Accordingly, the language at issue here does not implicate the concerns discussed by the Second Circuit in [*Avila*], and there is no requirement that every statement in a debt collection notice include an extra assurance that the fact stated *will not* change in the future.

*Id.* at *5 (emphasis in original). Judge Mauskopf recognized any potential confusion from omitting a statement that ERC was seeking a static amount was vitiated by the letter providing payment options setting forth specific amounts that would fully satisfy the account and including a date by which the plaintiff could pay a specific, reduced amount to satisfy his account. *Id.* (*citing Rozier v. Fin. Recovery Sys., Inc.*, No. 10-CV-3273 (DLI) (JO), 2011 WL 2295116, at *5 (E.D.N.Y. June 7, 2011) (proposing one way to avoid confusion and uncertainty where a debt is

---

[4] The plaintiff in *Dick* claimed violations of sections 1692e, 1692e(2), (5), (10), 1692f, and 1692f(1) based on the letter. *Id.* at *1. In Ms. Harley's Complaint, she alleges these claims under the same provisions and adds a citation to section 1692g.

accruing interest charges is to including a statement of the amount of debt due on a certain date in the future after the debtor's receipt of the letter so that the debtor "is advised of the amount of payment that will completely satisfy his obligations"). *See also Avila*, 817 F.3d at 79 ("We hold that a debt collector will not be subject to liability under Section 1692e for failing to disclose that the consumer's balance may increase due to interest and fees if the collection notice. . . ***clearly states that the holder of the debt will accept payment of the amount set forth in full satisfaction of the debt if payment is made by a certain date.***").

The Second Circuit has recently further discussed the *Avila* standard. *See Carlin v. Davidson Fink LLP*, 852 F.3d 207, 216-17 (2d Cir. 2017). In *Carlin*, the collector sent a mortgage payoff notice. The notice provided an amount of the debt that was post-dated two weeks and indicated the amount "may include estimated fees, costs, additional payments and/or escrow disbursements" that would become due in the intervening period and that if they were not yet due when a payment was received, the consumer would receive a refund. *Id.* The court found this statement clouded the letter for the consumer and it was questionable whether the statement accurately conveyed information required by the Act. *Id.* at 216 (citing *Veach v. Sheeks*, 390 F.3d 690, 693 (7th Cir. 2003)). The court's ambivalence was based on the absence of any description of what the "estimated fees, costs [and] additional payments" comprised and, thus, the ability to determine whether they were properly part of the amount of the debt. *Id.* The court clarified its ruling:

> A statement is incomplete where, as here, it omits information allowing the least sophisticated consumer to determine the minimum amount she owes at the time of the notice, what she will need to pay to resolve the debt at any given moment in the future, and an explanation of any fees and interest that will cause the balance to increase.

*Id.* It continued:

> As we explained in *Avila*, though not required by the text of the statute, a notice would also satisfy § 1692g if it used language such as : "As of today, [date], you owe $____. This amount consists of a principal of $__, accrued interest of $__, and fees of $__. This balance will continue to accrue interest after [date] at a rate of $__ per [date/week/month/year]."

*Id.* at 217 n.3 (*quoting Avila* 817 F.3d at 77 n.2).

*Avila* does not require collectors to include a statement regarding the accrual of interest and fees where they do not seek to collect such amounts. The *Avila* court did not speak to any situation where the collector was not seeking an increasing amount and did not hold that a collector must affirmatively disclose whether the amount could increase—that is, affirmatively state when it would ***not*** increase—rather, the Second Circuit only required disclosure when "the balance ***may*** increase due to interest and fees." *Avila*, 817 F.3d at 76 (emphasis supplied). Any argument to the contrary is unsupported by the court's explicit reasoning supporting its holding.

### b. The *Avila* court's reasoning does not apply to the theory asserted here, i.e., that a collector must affirmatively disclose when an account is not accruing interest.

The reasoning in *Avila* only supports disclosure in cases where the collector is seeking interest or other fees continuing to accrue. The *Avila* court applied the long standing two-step "least sophisticated consumer" standard and found, a consumer could reasonably interpret the notices, which only stated a "current balance," to mean either that the balance of the account would stay static—and, consequently, the consumer could satisfy the account through paying that amount—or that the balance was only current as of the date of the notice. *Id.* at 76. Second, the court found that "if interest is accruing daily, or if there are undisclosed late fees" as alleged by the plaintiffs, "a consumer who pays the 'current balance' stated on the notice will not know whether the debt has been paid in full." *Id.* The results of these inquiries support the court's explicit reasoning, "***the statement of an amount due, without notice that the amount is already***

*increasing due to accruing interest or other charges*, **can mislead** the least sophisticated consumer into believing that **payment of the amount stated will clear her account**." *Id.* (emphasis supplied).

This reasoning is inapplicable where a collector seeks a static balance. In such a case, while the consumer could interpret a balance as indicating either that the balance was static and later payment of that amount would satisfy the debt or that the notice merely states the balance as of the date of the notice, both interpretations are accurate. Thus, the notice would not violate the least sophisticated consumer standard. Further, in such a case, payment of the amount stated would satisfy the account, whether made on the day of the notice or at some later time. Accordingly, such a letter would not violate the Act or the holding of *Avila*.

This factual scenario was recently discussed in an opinion granting a collector summary judgment on a claim substantially identical to those asserted here. *See Santibanez v. Nat. Credit Sys., Inc.*, No. 6:16-cv-81-AA, 2017 WL 126111 (D. Or. Jan. 12, 2017). In *Santibanez*, the consumer alleged that a letter which stated "Balance: $875.33" violated the Act because it did not explain whether interest was accruing or at what rate it was accruing. *Id.* at *1. The court noted the consumer "does not contend that [the collector] attempted to collect any interest." *Id.* at *2. It continued, "instead, he argues that every initial collection letter must state the interest rate (even if that interest rate is zero) and warn the consumer that if the debt is sold to another creditor, that creditor may elect to add interest or fees to the debt amount." *Id.*[5] Citing *Avila*, the court noted that while failing to disclose accruing interest violates the Act, there was no danger of the consumer being misled in the present case because "payment of the 'balance' listed in the letter would have cleared plaintiff's account" and there is no duty "to affirmatively state that no interest is accruing or to warn the consumer that interest could accrue if the account is sold to

---

[5] *See* Compl. at ¶ 30 (alleging violation of Act based on possibility of sale of account to another creditor).

another creditor in the future." *Id* at *3 (*citing Martin v. Trott Law, P.C.*, 15-12838, 2016 WL 3997029, at *8 (E.D. Mich. Jul. 26, 2016); *Curto v. Palisades Collection, LLC*, No. 07-cv-529, 2011 WL 5196708, at *8 (W.D.N.Y. Oct. 31, 2011)).

The *Martin* court dismissed similar claims finding plaintiffs had not cited any support for the "apparently novel proposition" that a collection letter can be misleading and fail to accurately "state the 'amount of the debt' where it merely omits sums that the plaintiffs ***presume*** were due at the time of the sending, ***but which were not stated or demanded***" in the letter. *Martin*, 2016 WL 3997029, at *8. (emphasis supplied). *See also Curto*, 2011 WL 5196708, at *8. "[o]nly were defendants to now seek interest on the debt, would the letter have been misleading." *Id.*

In fact, the Southern District of New York just rejected the theory that a claim could be stated under *Avila* when the collector does not seek additional amounts from the consumer. *See Taylor v. Fin. Recovery Servs., Inc.*, No. 1:16-cv-4685 at *9-12 (S.D.N.Y. May 18, 2007).

Thus, to state a claim based upon the *Avila* court's interpretation of the Act, a plaintiff must allege the collector failed to disclose the continuing accrual of interest, ***and*** that the collector subsequently sought to collect those additional amounts. Here, there is no allegation that ERC sought to collect any amount other than the  principal balance stated in the Letter.[6] Absent such allegation, the *Avila* court's holding and reasoning simply do not apply.

### c. Analysis of case law applying the Seventh Circuit precedent adopted in *Avila* confirms a collector is *only* required to use the safe harbor language when the amount sought  is presently increasing due to the accrual of interest.

In reaching its decision, the *Avila* court relied on precedent from the Seventh Circuit Court of Appeals. *Avila* 817 F.3d at 76. Seventh Circuit case law on the issue instructs that a collector need not include a disclosure to consumers identifying amounts not sought by the

---

[6] Notably, although Ms. Harley's complaint in this matter was filed more than eighteen months following the date of the Letter, she does not, and cannot, allege ERC ever sought additional amounts from her during that time.

collector. Rather, the use of the *Avila* safe harbor language is only appropriate where the balance sought is, in fact, increasing due to the accrual of interest at the time of the letter.

To address concerns that "requiring collectors to disclose [the accrual of interest and fees] might lead to more abusive practices, as debt collectors could use the threat of interest and fees to coerce consumers into paying their debts" the Second Circuit adopted the safe harbor language crafted by the Seventh Circuit. *Avila* 817 F.3d at 76 (*citing Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000)). In *Miller*, the letter at issue stated the amount of the "unpaid principal balance" as of the letters's date, but stated the amount did not include unpaid interest and fees. *Miller*, 214 F.3d at 875. The court found the Act requires collectors to state the amount of the entire debt on the date of the letter and the court fashioned a safe harbor statement to satisfy the collector's duty to state the amount of the debt "where the amount varies from day to day that states, in part,

> If you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.

*Id.* at 875-76.

The *Avila* court adopted the safe harbor provision, holding that its use would insulate a collector from liability under section 1692e[7] "for failing to disclose that the consumer's balance may increase due to interest and fees. . . "because it accurately informs the consumer that the amount of the debt stated in the letter will increase over time[.]" *Avila*, 817 F.3d at 77. While the Second Circuit has not yet had occasion to address claims that a collector improperly used the safe harbor language, the Seventh Circuit has had such opportunity. *See Chuway v. Nat. Action Fin. Servs.*, 362 F.3d 944 (7th Cir. 2004).

---

[7] Although the claim at issue in *Avila* was brought under section 1692e of the Act, the *Miller* court crafted the safe harbor language for collectors to comply with section 1692g of the Act, which requires collectors to provide the amount of the debt in the initial communication or within five days thereafter. *See* 15 U.S.C. § 1692g(a)(1).

In *Chuway*, the consumer asserted a claim under the Act based on a letter requesting payment for a balance of $367.42, citing to the court's *Miller* decision. *Id.* at 947. The consumer alleged that under his contract with the creditor, the amount of the credit card account continued to accrue interest and, under *Miller* the collector was required to use the safe harbor language to comply with the Act. The court rejected the Plaintiff's position. It held using the safe harbor language was not required ***where there was no allegation the collector actually sought*** to collect the additional amounts identified by the Plaintiff, finding *Miller* inapposite. *Id.* at 947. It reasoned, the collector "hadn't been hired to collect the current balance of the plaintiff's credit card debt, insofar as that current balance exceeded $367.42" and, while the creditor, not the collector, may charge the plaintiff interest on the $367.42 between the accrual of the balance and payment, "that would not be a part of 'the amount of the debt' for which the defendant was dunning her, and hence it would not precipitate a violation by the [collector]." *Id.* It analogized:

> It would be as if between when the $367.42 debt was turned over to the defendant for collection and when the plaintiff received the dunning letter, the plaintiff had defaulted on a separate debt that she owed the credit card company. The fact that the defendant didn't add that to the debt for which it had been retained to dun the plaintiff would not result in a violation of the statute. Quite the contrary, for a debt collector has no authority to collect debts that it has not been authorized by a creditor to collect; nor was the defendant trying to do that.

*Id.*[8] The court concluded its discussion of the issue by stating:

> If the debt collector is trying to collect only the amount due on the date the letter is sent, then he complies with the Act by stating the "balance" due, stating that the creditor "has assigned your delinquent account to our agency for collection," and asking the recipient to remit the balance listed — and stopping there, without talk of the "current" balance.

*Id.* at 949.

Notably, at least three district courts have held that use of the *Avila/Miller* safe harbor language where the collector is ***not*** seeking to collect additional interest and fees, as suggested

---

[8] The court ultimately found a violation of the Act based on other language in the letter not at issue here.

by Plaintiff here, ***in fact states a claim for violation of the Act***. *See Resseg v. General Revenue Corp.*, No. 14-cv-8033, 2015 WL 4525869 (D.N.J. July 27, 2015); *Safdieh v. P&B Capital Grp., LLC*, 14-cv-3947 (FLW)(LHT), 2015 WL 2226203, at *6 (D.N.J. May 12, 2015); *Beauchamp v. Fin. Recovery Servs., Inc.*, No. 10 Civ. 4864(SAS), 2011 WL 891320 at *3 (S.D.N.Y. Mar. 14, 2011). In *Safdieh*, the collector used the safe harbor language in collecting an account, which the consumer claimed was not subject to interest or other charges. *Id.* at *1. Additionally, the consumer alleged the collector "had not been authorized by the original creditor . . . to collect such interest or charges." *Id.* As a result, the plaintiff asserted the letter constituted an arbitrary threat to add such fees in an attempt to pressure the consumer into a quick payment. *Id.*[9] The collector moved for judgment on the pleadings, arguing that it merely used the safe harbor language. *Id.* at *3.

The *Safdieh* court held a claim was stated under the Act because "[t]he least sophisticated debtor could reasonably believe that this language means there is some possibility of having to pay a greater charge" and "[b]ecause, as alleged, there is no such possibility, the language used in the debt collection letter is deceptive." *Id.* at *6 *See also Reeseg*, 2015 WL 4525869, at *3 (holding use of the safe harbor language was "misleading, because it suggests that [the collector] could potentially impose additional charges, even though that would never actually occur.").

In *Beauchamp*, the court denied a motion to dismiss claims asserting the collector misleadingly represented the amount of the debt. 2011 WL 891320 at *3. It reasoned the *Miller* safe harbor language did not protect a collector who includes the safe harbor language in the letter, but never seeks to collect the additional amounts referenced in the disclosure. *Id.*[10]

---

[9] The same concern the *Avila* court expressed. *Avila*, 817 F. 3d at 76.

[10] The fact that Ms. Harley is arguing to this Court that ERC has violated the Act by failing to include a disclosure under circumstances where other district courts have found that the very conduct requested by Ms. Harley states a claim for violation of the Act, provides a clear illustration of the efforts of the plaintiff's bar to place debt collectors

Thus, the cases addressing the appropriate use of the *Avila/Miller* safe harbor language make three pertinent concepts clear:

1. To state a claim under *Avila*, a consumer must allege the collector is attempting to collect amounts in addition to the initial balance stated in its letter;

2. Where no interest is accruing, there is no obligation to affirmatively disclaim the addition of interest; and

3. Where a collector is not seeking, or authorized to collect, interest or additional fees from the consumer, it is misleading to the least sophisticated consumer to include the safe harbor language.

As discussed in the ensuing section, in light of the above legal rules, the Complaint fails to state a claim for which relief may be granted because Ms. Harley has not alleged ERC sought any additional amounts from her after sending the Letter.

### III.   Plaintiff has failed to state a viable claim under the *Avila* decision.

Ms. Harley asserts ERC was required to use the *Avila* safe harbor language in the Letter, regardless of whether ERC is seeking to collect interest on the stated account balance, and premises that assertion on the belief that the creditor, not ERC, could charge her interest or fees. This claim is without merit. In the Complaint, Ms. Harley also asserts that the potential for the creditor to seek prejudgment interest under New York law (if and when a lawsuit is filed to collect on the account) renders such interest currently due, implicating *Avila's* holding. This claim is without merit for the additional and independent reason that no prejudgment interest is due until judgment is rendered. Finally, the Complaint does not contain any other allegation that ERC later sought, or would seek, to collect a greater amount from Ms. Harley than that stated in the Letter and, accordingly, Plaintiff's claims must be dismissed.

---

in an impossible catch-22 from a compliance standpoint through bizarre interpretations of the Act, contrary to the Act's stated goal to ensure that compliant debt collectors are not competitively disadvantaged.

### a. No prejudgment interest is due on Ms. Harley's account absent a judgment, nor is a creditor required to seek prejudgment interest from a consumer.

Section 5001 of the New York Civil Practice Law and Rules states, "[i]nterest shall be recovered upon a ***sum awarded*** because of a breach of performance of a contract" and "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed." N.Y.C.P.L.R. § 5001 (a)-(b) (emphasis supplied). So until a court awards damages for breach of contract—that is, a judgment is rendered—no prejudgment interest is due from the breaching party. Thus, Ms. Harley's assertion that prejudgment interest was presently accruing is patently inaccurate.

Additionally, the ability to seek prejudgment interest under New York law, through a lawsuit, does not affect the amount of the subject debt. *Bird v. Pressler & Pressler, LLP*, No. 12-cv-3007(JS)(ETB), 2013 WL 2316601 (E.D.N.Y. May 28, 2013). In *Bird*, a consumer alleged a collector violated the Act by sending the consumer a letter seeking an amount certain and later initiating suit on the debt seeking that amount plus prejudgment interest arguing that by seeking a greater amount in the lawsuit than in the collection letter, the letter must have failed to state the amount of the debt or, conversely, misled the consumer as to the amount sought. *Id.* at *1-3.

The court dismissed the claims as alleged, finding the collection letter, the state court action, or the combination thereof would not confuse the least sophisticated consumer. *Id.* at *2. The court reasoned "[t]he amount owed stated in the [c]ollection [l]etter was not false because [the collector] had not yet commenced any legal action." *Id.* It further reasoned the collector "presumably did not include any reference to potential legal action or pre-judgment interest for fear of violating" the Act. *Id.* Finally, the court noted the request for prejudgment interest was merely a request upon the court, not a consumer demand. *Id. See also Scioli v. Goldman & Warshaw PC*, 651 F. Supp. 2d 273, 281 (D.N.J. 2009) ("[a]ll of the items listed on the summons are only due after a judgment is entered[,]" that is, "the fees may be due if the plaintiff prevails

14

in the lawsuit."). Thus, the court found the interest was not yet due, and the prayer for relief did not constitute a demand on the consumer.

In the Complaint, Plaintiff asserts the creditor could seek prejudgment interest in a lawsuit on the account, however, even if true, the creditor's right to do so does not render the Letter false or misleading. In Count Two of the Complaint, Ms. Harley claims she would be responsible for paying prejudgment interest from the time she defaulted on the contract underlying the account. This assertion, however, is irrelevant. As the *Bird* court noted, a demand made in the absence of a lawsuit need not attempt to collect prejudgment interest: it is not part of the debt. This is further supported by the plain language of section 5001, which grants an entitlement to prejudgment interest *only* upon judgment. And, even after a suit is filed, a prayer for prejudgment interest is merely a request to the court to order that it is due. Until prejudgment interest is awarded by a court, it is not owed by the consumer. *See also Scioli*, 651 F. Supp. 2d at 281 (noting statutory amounts would only be due and owing after the court entered judgment awarding them). Further, it would likely have violated the Act for ERC to have sought pre-judgment interest in the letter. *See Veach,* 316 F.3d at 693 (7th Cir. 2003) ("Since Veach cannot be held liable for treble damages, court cost or attorney's fees until there has been a judgment by a Court, they cannot be a part of the 'remaining principal balance of a claimed debt').

Even if the creditor were to one day file a lawsuit, and even if the creditor sought statutory prejudgment interest in the complaint, that would not render the prior Letter false or misleading, as explicitly found by District Judge Seybert in *Bird*. Additionally, the Seventh Circuit's reasoning in *Chuway* also supports that conclusion. *See Chuway*, 362 F.3d at 949 ("It would be as if between when the $367.42 debt was turned over to the defendant for collection and when the plaintiff received the dunning letter, the plaintiff had defaulted on a separate debt

15

that she owed the [creditor].”). Here, Ms. Harley does not allege ERC attempted to collect any prejudgment interest from her, rather she merely suggests that prejudgment interest *could* potentially be sought, by the creditor, *if* the creditor filed a lawsuit.

Ms. Harley's claims seek to put collectors in an untenable position. Under her theory, when a collector seeks to collect on an account based on a breach of contract, it would have two options. The first option would be to demand prejudgment interest. But doing so could be deemed misleading to the consumer because it would imply that such interest was presently due and would continue to accrue when, in fact, it is not yet owed. The second option would be for the collector to affirmatively waive claims for prejudgment interest and other amounts the creditor could seek under the agreement or state law. But doing so would require the needless interjection of potentially confusing language, requiring a lengthy statement about whether the waiver only applies to the debt while placed with collector, or whether the waiver extends to the debt once it is returned to the creditor, if uncollected, and would require an explanation that prejudgment interest is not actually due or owing until a lawsuit has been filed and a court enters a final judgment in favor of the creditor. A good faith effort by the collector to draft such a statement would only raise further issues as to whether the collector even has the authority to waive such a right on behalf of the creditor after placement, and would create fertile ground for a consumer to claim confusion or misleading threats of future fees and litigation in violation of the Act, claims based on the threat to take action the creditor never intends to take.[11]

Accordingly, the creditor's possibility of recovering prejudgment interest, upon the subsequent filing of a lawsuit, is irrelevant to Ms. Harley's claims under the Act, is contrary to the legal authority discussed herein, and serves only to cloud the issues before this Court.

---

[11] *See* 15 U.S.C. § 1692e(5) (prohibiting "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken").

### b. Plaintiff's failure to allege that ERC sought interest or other fees from Ms. Harley, over and above the stated balance, is fatal to her *Avila* claim.

The Complaint fails to allege ERC sought any interest, fee or other amount, over and above the stated balance. Although Plaintiff suggests in the Complaint that additional amounts could have been sought from her on the account, as discussed in Parts II.b and II.c above, courts have rejected the argument that those circumstances are relevant in the context of the claim asserted here. In *Chuway*, the Seventh Circuit ruled that, where a collector is not authorized to collect interest on an account, it is not required to seek to collect such interest nor disclose that another party could seek it and, in fact, seeking to collect such interest, without creditor authorization, would violate the Act. *Chuway*, 362 F.3d at 947. In *Martin*, the court held there was nothing in the Act to prevent a collector from seeking *less* than the total amount owed, further noting there is no authority supporting a claim under the Act that a letter is misleading based upon the omission of "sums that the plaintiff presumes were due at the time of the sending, but which were not stated or demanded" in the letter. *Martin*, 2016 WL 3997029, at *8. Furthermore, the Western District of New York held in *Curto* that a letter is not misleading for failing to seek interest on the account, absent a subsequent demand for that interest. *Curto*, 2011 WL 5196708

The unsupported assertion in the Complaint that the subject account **should** have had contractual interest accruing is irrelevant where, as here, Ms. Harley does not allege ERC later sought such interest from her. ERC was not authorized to collect any such interest, just as it was not authorized to seek prejudgment interest from Ms. Harley. And as discussed above, a collector is not liable under the Act simply by failing to seek amounts the consumer presumes are owed.

The Complaint does not contain a necessary allegation to state a claim under *Avila*, specifically, that ERC sought an increasing balance from Ms. Harley. Absent such an increasing

demand, it would be misleading to include the *Avila* safe harbor language. Nor was ERC required to expressly state that it was not seeking interest on the account. *See Santibanez*, 2017 WL 126111, at *3. Accordingly, Plaintiff's claims under sections 1692e and 1692g must be dismissed.

### c. Ms. Harley's attempt to recast her *Avila* claims as violation of other provisions of the Act is likewise unsupported in law.

All told, the Complaint asserts eight counts under the Act. All but one of these counts is premised on the alleged failure of ERC to include a statement regarding the accrual of interest and fees, though no such interest or fees was presently accruing on the amount referred to ERC for collection.[12] Although Ms. Harley asserts that these allegations present additional claims based on ERC's itemization of the amounts due as well as alleged violations of sections 1692f and 1692e(5), her allegations are insufficient to state a claim on any of these bases.

### 1.  Itemizing principal, interest, and other fees does not violate the Act.

In *Dick*, Judge Mauskopf explicitly approved ERC's letter in substantially the same form as the Letter that Ms. Harley received. 2016 WL 5678556 at *1, 4-8. The court held the itemization included in the letter did not violate the Act absent any allegation that the account was presently accruing such interest or non-interest charges and fees at the time that the collector sent the letter at issue. *Id.* at *5.

Moreover, the itemization included in the Letter substantially complies with the requirements set forth in *Carlin*, for complying with the Act even if additional amounts were accruing. In *Carlin*, the Second Circuit held that a collector complies with its requirements if it presents a statement including the total amount, the principal, and the accrued interest and fees due and indicates the rate at which the total would increase so that the consumer could determine what

---

[12] The one remaining count, count five, is addressed in Part IV, below.

would be required to resolve the account in the future. *Carlin*, 852 F.3d at 217 n.3. ERC's Letter includes this information, indicating that the total amount sought comprised a principal of $1,265.07 and no charges for interest or other charges and fees. The Letter further advises that a payment plan was available to Ms. Harley and provided dates in the future by which she could take advantage of the payment plan. *See also Dick*, 2016 WL 5678556, at *5 (noting that *Avila's* holding does not require an affirmative statement that the amounts listed will not increase, and that future dates for paying listed amounts to resolve the account negates confusion).

Accordingly, there is no basis for Ms. Harley to argue that including an itemization in the Letter violates the Act because she has not alleged that ERC was attempting to collect additional amounts from her beyond those stated in the Letter.

### 2. Ms. Harley does not allege any facts in support of her claims under sections 1692f and 1692e(5).

Ms. Harley also claims that ERC's Letter violated sections 1692f and 1692e(5) of the Act. These claims, however, are not based on any factual allegations and must be dismissed.

In *Dick*, the court dismissed claims under these same provisions of the Act. 2016 WL 5678556, at *1. It reasoned section 1692e(5) prohibits "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken" so to state a claim under this provision, the plaintiff must "allege the existence of a threat and that the action threatened was prohibited by law or not intended to be taken." *Id.* at *5. The court found there was no threat contained in the letter at issue and that an itemization of the account could not plausibly be construed as a threat that the amounts listed would change in the future. *Id.* at *6.

The court further found there was no claim stated under section 1692f or its subsections. As for subsection 1692f(1), the court found the provision prohibits collection of amounts not authorized by state law or the agreement underlying the account and it was undisputed that there

was no sufficient allegation in the complaint that the principal sought was not authorized by the agreement creating the account. For section 1692f's general prohibition on unfair conduct, the court held that the section is "meant to allow the [c]ourt to sanction conduct that the [Act's] other provisions fail to specifically address" and "it is not meant to serve as a generic back up argument when conduct addressed elsewhere in the [Act] does not support a violation." *Id.* at *7 (*citing Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006)). As a result, the court found the allegations did not state a claim under section 1692f because the complaint merely claimed the letter was false or misleading: a claimed violation of section 1692e.

Here, Ms. Harley has failed to state a claim under sections 1692f or 1692e(5) because ERC's letter does not contain any threats of future action and she has not alleged any conduct on the part of ERC except that its Letter fails to properly set forth the amount of the debt. As in *Dick*, ERC's letter merely contains an itemization of the amount sought, as required by state law,[13] a separate listing of the amount of the debt, and provides payment plan options. *Dick*, 2016 WL 5678556 at *6. Thus, as in *Dick*, there is no language that could be plausibly construed as a threat.

Furthermore, Ms. Harley does not allege that ERC sought any amounts from her that it could not legally seek. Rather she argues throughout the Complaint, though in conclusory fashion, the amount sought by ERC was not the full amount that the creditor was entitled to seek from her under either the agreement creating the debt[14] or state law.[15] Accordingly, the Complaint fails to state a claim under any provision of the Act based on ERC's presentation of the amount owed, and such claims must be dismissed.

---

[13] *See* 23 N.Y.C.C.R. § 1.2(b).
[14] Compl. at ¶¶ 14-20.
[15] Compl. at ¶¶ 19-31 [incorrectly numbered as paragraph 21].

IV.     **The use of ERC's initials in its letters is wholly consistent with FTC guidance and does not violate the Act.**

Count Five of the Complaint asserts that ERC violated the Act by using its initials, ERC in the Letter rather than the full corporate name, Enhanced Recovery Company, LLC. Ms. Harley claims that this states a claim under section 1692e(14) of the Act, which prohibits the use of false names in collecting debts. It does not.

Section 1692e(14) prohibits "[t]he use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization." 15 U.S.C. § 1692e(14). Although the term "true name" is not defined, the Supreme Court noted that "its import is straightforward: A debt collector may not lie about his institutional affiliation." *Sheriff v. Gillie*, 136 S. Ct. 1594, 1602 (2016). *Accord Vincent v. The Money Store*, 736 F.3d 88, 101 (2d Cir. 2013) ("whether the letter misleads consumers . . . is the statutory touchstone for all aspects of the [Act], including the false name exception"). In *Gillie*, the Court held that collectors' use of creditor letterhead did not violate section 1692e(14) where the letter explained the relationship between the parties. *Gillie*, 136 S. Ct. at 1602. It reasoned that, "[f]ar from misrepresenting [the collectors'] identity, letters sent by [the collectors] accurately identify the office primarily responsible for collection of the debt (the [creditor]), [the collectors'] affiliation with that office, and the address ([the collectors'] law firm) to which payment should be sent." *Id.*

In its long-standing guidance on the Act, the FTC identified several acceptable names a collector may use. A debt collector:

> may use its full business name, the name under which it usually transacts business, or a commonly-used acronym. When the collector uses multiple names in its various affairs, it does not violate [§ 1692e(14)] if it consistently uses the same name when dealing with a particular customer.

21

Federal Trade Commission, Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50107 (1988) [hereinafter FTC Commentary].[16]

Cases that find a violation of a section 1692e(14) "typically involve a debt collector misrepresenting its identity, such as by purporting to be the creditor when it is not, purporting to be a government agency when it is not, or purporting to be distinct from the creditor when it is not." *Mahan v. Retrieval-Masters Credit Bureau, Inc.*, 777 F. Supp. 2d 1293, 1300 (S.D. Ala. 2011). In *Mahan*, the court held it did not violate the section for the collector, Retrieval-Masters Credit Bureau, to use the trade name American Medical Collection Agency. The Alabama court took judicial notice of the collector's registration with the New York Department of State to do business under the name American Medical Collection Agency. *Id.* at 1298.

The *Mahan* court reasoned, "the fundamental point is that, as one district court recognized, '§ 1692e (14) at its core clearly prohibits the use of a name that is neither the collector's actual corporate name nor its trade name, licensed or otherwise.' " *Id.* at 1301 (internal citations omitted). The court further found that the case did not fit that paradigm as the name the collector used in communicating with the plaintiff was its duly licensed trade name and that there was nothing deceptive or manipulative about contacting the plaintiff under that name, especially since the collector had been conducting business under the name for years. *Id.* The court granted the motion to dismiss, finding that there were no facts pleaded in the complaint to suggest the use of the name registered in New York "was intended to or had the effect of, confusing, misleading or deceiving [the plaintiff]." *Id.*

Where a trade name is registered, it does not violate section 1692e(14), or other provisions, of the Act to use that name, even where it is registered in a state other than where the

---

[16] Although this FTC guidance is not binding on the district courts, it is entitled to deference to the extent its logic is persuasive. *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 455-56 (3d Cir. 2006). *See also Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 237 (2d Cir. 1998) (*citing* FTC Commentary).

collection at issue is attempted. *Velez v. Healthcare Revenue Recovery Grp., LLC*, No. 1:16-cv-377, 2017 WL 1476144 (M.D.N.C. Apr. 24, 2017). In *Velez*, the plaintiff brought a putative class claim under multiple provisions of the Act, including section 1692e(14), claiming that a collector used a false name in a letter it sent to him because the name used was not registered in the state of North Carolina. In dismissing the claims under Rule 12(b)(6), the court took judicial notice of the collector's registration of the trade name, Account Resolution Services, in the state of Florida as a trade name for the collector.

> Relying on the Florida fictitious name registration, the court reasoned
>
> Because both North Carolina and Florida law permit businesses to use an assumed or fictitious name, see Fla. Stat. § 865.09(3); N.C. Gen. Stat. § 55D-2(a)(6), the allegations contained in the [c]omplaint do not plausibly establish that [the collector] somehow misrepresented or lied about its affiliation with ARS by sending a letter under an assumed business name.
>
> Consistent with that conclusion, it is undisputed that [the collector] has registered its fictitious name, ARS, in the State of Florida as evidenced by the public filing attached to [the collector's] brief. . . . In light of the undisputed facts, this court finds no plausible basis for [the plaintiff's allegation that "ARS Account Resolution Services' is not [the collector's] true name." Id.

Consistent with FTC Commentary and federal case law, using ERC in the Letter does not violate the Act. First, ERC is an acronym for Enhanced Recovery Company, LLC, ERC's legal, corporate name. Acronyms are explicitly permitted under the FTC Commentary.

Further, ERC is, in fact, a registered trade name for Enhanced Recovery Company, LLC. As in *Velez* and *Mahan*, the name that the plaintiff claims misrepresents the identity of the collector has been registered as a trade name for the collector. ERC is presently, and at the time of sending the Letter, a registered fictitious name for Enhanced Recovery Company with the Florida Secretary of State. *See* Registration.[17] Furthermore, ERC has also been registered with the

---

[17] A copy of ERC's fictitious name registration is attached to the Declaration of Peter G. Goodman, dated May 19, 2017 ("Goodman Dec."), as Exhibit B.

Florida Office of Financial Regulation and appears on ERC's license as a "debt collection agency" issued from that office. *See* License.[18]

Moreover, ERC is registered with the United States Patent and Trademark office as a federal service mark used by Enhanced Recovery Company, LLC for debt recovery services. *See* ERC, Reg. No. 5,169,227. The registration certificate for this registration further indicates that Enhanced Recovery Company filed for registration in June 2015 and has been using the name ERC in connection with such services since 1999. *See id.*

Finally, the Complaint does not allege ERC used inconsistent names when seeking the subject account or has otherwise referred to itself as "ERC" to mislead. The FTC Commentary states a collector is permitted to use inconsistent names in conducting its business as long as "it consistently uses the same name when dealing with a particular customer." FTC Commentary at 50107. Likewise, binding authority recognizes this prohibition is intended to prevent misrepresentations regarding the entity's affiliation. Thus, there is nothing inappropriate where, as here, a collector consistently uses the same name with a consumer and instructs the consumer to send correspondence or payments to its name and address.

The only allegations concerning the conduct of ERC in the Complaint is that ERC sent Ms. Harley the Letter, which is attached to the Complaint as Exhibit A. Throughout the Letter, the name ERC is used to refer to the identity of the collector. Ms. Harley does not allege ERC otherwise contacted her or used a different name when doing so. The Letter further provides ERC's corporate address, which it lists as "ERC, 8014 Bayberry Road, Jacksonville, FL 32256." *Id.* In light of the clear direction of how to contact ERC or lodge a dispute of the account, any alleged confusion would be immaterial and thus fail to state a claim in this Circuit. See *Dick* 2016 WL 5678556, at *3

---

[18] A copy of ERC's License is attached to the Goodman Dec. as Exhibit C.

## V.      Conclusion

Though the Complaint states that a consumer would not know what balance ERC was seeking upon reading the Letter,[19] this assertion is belied by a plain reading of the Letter. It clearly states "Balance: $1,265.07." Compl. at Exh. A (Goodman Dec., Exhibit A). The statement is unmistakably clear and unambiguous. There is no mention in the Letter of pre-judgment interest or any other interest or fees accruing on the account. Consistent with the holding in *Avila*, a consumer, when faced with this statement would interpret it to mean that the balance sought is $1,265.07 and payment of that amount would clear the account. Ms. Harley has not alleged that payment of the stated balance, $1,265.07, would not, in fact, satisfy the account, nor can she so allege in good faith.

Counsel for the putative class, though claiming to fairly and adequately represent consumers, asks this Court to create a rule of law requiring that all collectors ***must*** seek prejudgment interest in demands to consumers, or else violate the Act because the demand does not seek the full amount that a judge could one day award. While a favorable holding may serve the interests of Plaintiff's attorneys, there can be no question that it would not serve the interests of Ms. Harley, or any other consumers, and would be inconsistent with the express aims of the Act, which is to protect consumers and compliant collectors alike. Thus, the argument is untenable, and Plaintiff's claim must be dismissed, with prejudice.

Finally, because the claims advanced in the Complaint are so clearly at variance with the aims of the Act and unsupported by factual allegations in the Complaint, ERC presumes, as it must, that this action was filed against it in bad faith and for the purposes of harassment and, accordingly, it seeks from Ms. Harley or her counsel, or both, its fees and costs incurred in defending this action pursuant to 15 USC §1692k (a)(3).

---

[19] *See* Compl. (DE 1) at ¶ 39.

Dated:  New York, New York
        May 19, 2017                         SMITH, GAMBRELL & RUSSELL, LLP


                                    By:___/s/ *Peter G. Goodman*_____
                                             Peter G. Goodman
                                    1301 Avenue of the Americas, 21st Floor
                                    New York, New York 10019
                                    Phone: (212) 907-9700
                                    Fax: (212) 907-9800
                                    pgoodman@sgrlaw.com
                                    *Attorney for Defendant*
                                    *Enhanced Recovery Company, LLC*